70 N.J. Super. 9 (1961)
174 A.2d 645
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD A. HARRIS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1961.
Decided October 20, 1961.
*12 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Samuel Rosenthal, assigned counsel, argued the cause for appellant.
Mr. Donald H. Mintz, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney; Mr. Mintz, on the brief).
GOLDMANN, S.J.A.D.
Defendant was indicted, tried and found guilty by a jury of rape (N.J.S. 2A:138-1) and robbery (N.J.S. 2A:141-1). His motion for a new trial was denied. Defendant was sentenced to State Prison terms of 15-20 years and 5-10 years for these respective crimes, the sentences to run consecutively. On this in forma pauperis appeal he seeks reversal because (1) the remarks of the prosecutor in summation constituted an appeal to bias and prejudice; (2) there was error in the admission of testimony and in the court's charge; (3) the verdict was against the weight of the evidence and the result of mistake, passion or prejudice; and (4) defendant's rights were violated when he was not permitted to make a statement on his own behalf at the time of sentence.

I.
Defense counsel at no time objected to the prosecutor's remarks in summation. However, he claims plain error under R.R. 1:5-1(a). To establish plain error, a defendant must demonstrate that there was "legal impropriety affecting [his] substantial rights * * * and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error posesssed a clear capacity to bring about an unjust result." State v. Corby, 28 N.J. 106, 108 (1958); State v. Hipplewith, 33 N.J. 300, 309 (1960). We do not find plain error within the definition of the Corby case. The prosecutor's comments *13 did not fall within the prohibited area exemplified by State v. Ferrell, 29 N.J. Super. 183 (App. Div. 1954), or State v. Bogen, 13 N.J. 137 (1953), on which defendant relies.
We need deal with only the second of the two comments made by the prosecutor which defendant characterizes as a "glaring appeal to bias and prejudice." Referring to the testimony of the victim, he said
"* * * She was under great tension. I am convinced now that that is no act; she was in fear of her life and I think if your wife or your sister or your daughter would be subjected to that [her testimony had been that defendant had threatened to kill her when she screamed], that any woman would be fearful of death itself and I think any woman would do the same as this woman did. She thought she would have been killed or something. Consider that if it were your daughter or your wife or your sister or anyone, whether they would not have done what this woman did."
While this was an emotional projection of the prosecutor's argument that the victim's testimony was worthy of credence, we cannot say that in the entire circumstances of the case it amounted to plain error within the meaning of the rule. Our courts have recognized that a prosecutor often presents his case graphically and forcefully, and that it is "unreasonable to expect that criminal trials will be conducted without some show of feeling." State v. Johnson, 31 N.J. 489, 510 (1960).

II.
On redirect examination, the prosecuting attorney asked the victim, "Just to sum this whole thing up, Mrs. [A], were you raped that night?" The answer was, "Yes." Defense counsel objected because the question was not proper redirect. The court permitted the question and answer to stand. The matter was in the court's discretion, and we see no abuse.
Defendant complains that the court erred in permitting Police Sergeant Ike to testify as to certain photographs he had taken of the scene of the rape shortly after the crime *14 was committed, and in receiving the pictures in evidence. Defense counsel objected to the testimony because Ike's name had not been submitted in the answer to his demand for the names and addresses of witnesses who might establish defendant's presence at the scene of the crime. Clearly, the police photographer's testimony did not have that purpose. All he testified to was that he had taken the pictures of the interior of the garage where the rape allegedly occurred. Those pictures did no more than give the jury the physical setting of the crime. At the oral argument assigned counsel readily admitted that the court, in its discretion, could let Ike testify because his taking of the pictures did not put defendant at the scene of the rape.
Error is also claimed in permitting Sergeant Daher to testify as to his investigation into the ownership of a gold watch found in the garage, and that as a result of this investigation he obtained a warrant to arrest defendant. We consider the objection to be without merit.
At the trial defense counsel objected when Alice Saldutti, a clerk in a Newark jewelry store, was called as a rebuttal witness and permitted to testify that she was in charge of watch repairs and that the gold watch found in the garage had been brought to the store for repair on May 3 and May 31, 1957 by a Richard Harris, 23 Hollywood Avenue, East Orange. The address is admittedly the residence of defendant and his family. The ground of objection to her testimony was that her name had not been submitted in answer to the demand for the names and addresses of all witnesses upon whom the State intended to rely to establish defendant's presence at the scene of the crime.
Defendant had testified that he had never owned, possessed or seen the watch in question. The trial judge specifically admitted the testimony of Miss Saldutti for the sole purpose of contradicting defendant's testimony, and not for the purpose of placing him at the scene of the crime. In his charge the judge was careful to repeat the reason for admitting Miss Saldutti's testimony:
*15 "This testimony was received in evidence for only a limited purpose and that was to contradict the defendant's statements that he did not own or ever possess the watch in question and never brought it to the said jeweler for repairs. Such testimony may not be considered as a circumstance tending to prove the defendant was present at the time and scene of the crimes but only for the purpose of affecting his credibility."
The admission of rebuttal testimony is a matter committed to the discretion of the trial court, and the exercise of that discretion will not be overruled in the absence of gross abuse. Miss Saldutti was produced to refute answers defendant had given when questioned about the watch. Contradicting a defendant on rebuttal is not error. State v. King, 133 N.J.L. 480, 483 (Sup. Ct. 1945), affirmed per curiam, 135 N.J.L. 286 (E. & A. 1947).

III.
In the course of his detailed charge, the trial judge, in giving the jury his reason for admitting Miss Saldutti's testimony over objection, said in passing that she had testified that "the defendant under the name of Richard Harris of 23 Hollywood Avenue, East Orange, New Jersey, did bring into said store for repairs the watch which the State contends was the property of the defendant," and which was found at the scene of the crime. Miss Saldutti had merely said her record showed that "Richard Harris, 23 Hollywood Avenue, East Orange," had brought the watch in for repairs on May 3 and 31, 1957. Defendant characterizes the trial court's statement that defendant brought the watch into the store as a glaring misstatement which tended to influence the jury. The judge's comment was entirely incidental. He had just finished telling the jury that it was the sole judge of the facts and any statement made either by counsel or the court which did not coincide with its recollection was to be disregarded. We perceive no error.
*16 It is further urged that the trial court erred in charging the law of circumstantial evidence. Defendant concedes that the charge itself was correct. His contention is that it was improper to charge the law of circumstantial evidence because such evidence played no part in the case, and the result was that the jury was misled. The record is replete with circumstantial evidence, offered by both sides. We therefore find no error.

IV.
Defendant next claims that its motion for a judgment of acquittal at the close of the case was improperly denied because the State had failed to establish rape. Rape is defined as "carnal knowledge of a woman forcibly against her will," N.J.S. 2A:138-1. It is defendant's contention that the State failed to establish the necessary element of resistance; that by the testimony of the victim herself, "there was no proof of any scream, force, threat of force, resistance or struggle when it became evident that the man intended to sexually attack her." The argument is without valid foundation, either in the record or in law. The victim testified that when she started to scream, defendant put his hand over her mouth and said, "Be quiet. I'll kill you, so help me God I will. I don't want to but I will." He then proceeded to throw her on the back seat of the car she had driven into her garage, and it was there, she testified, that he raped her.
We find that the testimony established the two elements of rape: force and lack of consent. Defendant directs his argument to the victim's failure to resist. The former test, flatly stated without qualification, that a woman must resist "to the uttermost," has been characterized as obsolete. Bulls v. State, 33 Okl. Cr. 64, 68, 241 P. 605, 606 (Crim. App. 1926); see also, Kidd v. State, 97 Okl. Cr. 415, 417, 266 P.2d 992, 994-995 (Crim. App. 1953). The fact that a victim finally submits does not necessarily imply that she *17 consented. Submission to a compelling force, or as a result of being put in fear, is not consent. Hazel v. State, 221 Md. 464, 469-470, 157 A.2d 922, 925 (Ct. App. 1959). The court there said:
"The kind of fear which would render resistance by a woman unnecessary to support a conviction of rape includes, but is not necessarily limited to, a fear of death or serious bodily harm, or a fear so extreme as to preclude resistance, or a fear which would well nigh render her mind incapable of continuing to resist, or a fear that so overpowers her that she does not dare resist. * * *"
See also, 44 Am. Jur., Rape, §§ 5-8, 12 and 13, pp. 903-906, 909-910 (1942); 75 C.J.S. Rape §§ 11-12, 15, pp. 473-477, 481-482 (1952); State v. Conner, 97 N.J.L. 423, 427-428 (Sup. Ct. 1922); 2 Schlosser, Criminal Laws of New Jersey (rev. ed. 1953), § 2074, pp. 1024-6.
Applying this test, the victim was raped, "forcibly against her will," within the meaning of N.J.S. 2A:138-1, if defendant's threat could reasonably be taken as applying to the whole of her encounter with her attacker. The jury was justified in concluding that the victim resisted as much as she possibly could under the circumstances: defendant had threatened to kill her, her arms were tied behind her, her mouth gagged, her coat wrapped around her head, and she ceased to resist in the face of a threat against her life. What happened to her was done forcibly and against her will.
The record fully supports the jury's conclusion that it was defendant who was the attacker. His victim positively identified him in court. She also had had no difficulty in identifying him at the police line-up, by his appearance and voice. We do not agree that the line-up was not a fair one. Defendant's insinuation that the victim was able to identify him because of a newspaper account which appeared shortly before the line-up and which named the accused, was denied by her. The credence to be lent her testimony in this and other respects was for the jury to determine, as was the credence to be accorded defendant's alibi witnesses.
*18 The test for acquittal is whether, viewing the proofs in their entirety and giving the State the benefit of all proper inferences therefrom, there is any legal evidence from which the jury could properly reach a conclusion of guilt. State v. Smith, 32 N.J. 501, 521 (1960). We find the posture of the evidence at the close of the entire case such that the verdict of guilty returned by the jury was well founded and entirely proper. We cannot say, in the light of the evidence, that the verdict was the result of mistake, partiality, prejudice or passion.

V.
Defendant's last point is that his rights were violated by the trial judge's failure to ask him if he had anything to say in his own behalf. R.R. 3:7-10(d) provides that
"* * * Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment. * * *"
Defendant was not afforded that opportunity. The State frankly admits error. As the United States Supreme Court recently observed in Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670, 673 (1961), none of the relevant major changes that have evolved in criminal procedure in modern times "lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself. We are buttressed in this conclusion by the fact that the Rule [Federal Criminal Rule 32(a), similar to R.R. 3:7-10(d)] explicitly affords the defendant two rights: `to make a statement in his own behalf,' and `to present any information in mitigation of punishment.'" The court rejected the Government's contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Federal Criminal Rule 32(a).
*19 Although we find the guilty verdict entirely proper and justified, defendant will have to be resentenced. We will retain jurisdiction and remand the case for resentence after compliance with R.R. 3:7-10(d). Resentencing shall take place on or before October 27, 1961, defendant to be represented before the trial court by Joseph A. Lerner, who was his attorney at the trial, and his present assigned attorney, Samuel Rosenthal.