No. 34,817

In Re Application of RALPH V. BRENNER for Writ of Habeas Corpus Against MILTON F. AMRINE, Warden of the Kansas State Penitentiary.

(100 P. 2d 688)

Opinion filed April 6, 1940.

*Hal C. Davis*, of Topeka, for the petitioner.

*Jay S. Parker*, attorney general, and *E. V. Bonee*, assistant attorney general, for the respondent.

The opinion of the court was delivered by

HOCH, J.: The petitioner seeks a writ of habeas corpus. On February 24, 1937, he pleaded guilty to a charge of larceny from a railroad station and was sentenced to the penitentiary under the provisions of G. S. 1935, 21-1909. The merchandise stolen was valued at $17.35. He now asserts that he was unlawfully sentenced under that statute and that the crime was petit larceny for which the maximum sentence is a term in jail not exceeding one year. The question presented is whether the theft of merchandise from a baggage truck, under the facts and circumstances hereinafter stated, is larceny within the meaning of the statute, which reads as follows:

"If any larceny be committed in any railway depot, station house, telegraph office, passenger coach, baggage, express or freight car, or any caboose on any railway in this state, the offender may be punished by confinement and hard labor not exceeding seven years."

The material portions of the information were as follows:

". . . that Ralph V. Brenner at the county of Shawnee, in the state of Kansas aforesaid, and within the jurisdiction of this court, on the —— day of February, A. D. 1937, did unlawfully, feloniously and willfully take, steal, carry away and convert to his own use, from the immediate premises of the passenger station of the Atchison, Topeka and Santa Fe Railway Company, a corpora-

tion, at Topeka, Shawnee county, Kansas, *i. e.,* from a baggage truck standing on the platform of said station, within three feet of the wall of said station and under the canopy of said station extending over said platform, certain personal property of another, to wit: [merchandise described] said larceny being wholly committed *in the said railway depot* above described, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the state of Kansas."

The sole question is whether the offense was larceny "committed in any railway depot." The petitioner contends that since the baggage truck was standing on the platform outside the building no larceny was committed "in a railway depot." Respondents argue that within the meaning of this statute the term "railway depot" includes more than the building or the "station house," or the warehouse where merchandise is temporarily stored, and that the narrow construction urged by the petitioner would defeat much of the purpose of the statute.

Either construction, if reduced to formal definition, might present difficult and doubtful situations. It may be urged on the one hand that if the words "railway depot" be not limited to the building itself the statute would become so broad as to include the station platform, the railroad yards and the whole territory within the "switching" district of the station. On the other hand, to say that the words mean only the warehouse or station building leads to obvious absurdity. Under such an interpretation, if a person stood on the platform, reached inside the open door of a baggage car being unloaded at the station and stole an article of merchandise he would commit *grand* larceny (the statute plainly covering larceny from a baggage car); if he took the same article from the baggage truck as the truck was being pulled to the baggage room he would be guilty of *petit* larceny; and if he waited until the truck had been pulled a foot within the baggage room and then snatched the article his offense would swing back to *grand larceny!*

What was the purpose of the statute? It seems clear the legislature, recognizing how easy it is, comparatively, to steal property from railroad stations or railroad cars, and particularly merchandise that is being transported by railroads, deemed it necessary to impose a severe penalty in order to deter such offenders. The statute was enacted in 1871 and contained three sections. Sections 1 and 2 were declared unconstitutional in *State v. Guiney,* 55 Kan. 532, 40 Pac. 926, on grounds not here material. It is pertinent to note, however, that the two sections were clearly intended to help effectuate the

purpose above stated. They dealt with the burglary feature—the breaking into or the attempt to break into "any station house, depot, ticket office, . . . caboose or other railway carriage or building . . . with intent to commit therein a felony or misdemeanor." The present statute dealing with larceny, which was section 3 of the act of 1871, was upheld in the case of *In re Tutt, Petitioner,* 55 Kan. 705, 41 Pac. 957.

The petitioner argues that the case of *In re Spaulding,* 75 Kan. 163, 88 Pac. 547, squarely supports his contention. We do not find it so. In that case the larceny was committed from a railroad "box car" "placed at the side of a railroad track and used as a tool and supply house." The court said that "a box car, dismantled, set off the track and *used as a tool* and *supply* house is neither such a building nor such a car as described or contemplated" by the statute. In other words, it was held that since the railroad car was no longer used for passenger, freight or baggage purposes it was no longer within the statute. The case conforms to the view heretofore expressed that a prime purpose of the statute was to protect merchandise being transported for the public. Such being an obvious purpose of the law, it would require plain provisions to the contrary to exclude merchandise in transit from the protection of the statute during the routine period in which it is being moved across the loading platform between the railroad car and the warehouse. In passing, it may be noted that the instant statute applies to larceny "committed in any *railway depot, station house,*" etc. If the word "depot" means only the building, then the term "station house" is repetition and surplusage. But entirely aside from that, the words "railway depot" not only do not require the narrow interpretation urged by the petitioner, but according to all the many authorities we have examined have a much broader meaning. In 18 C. J. 781, we find the following:

"DEPOT.—*In Railroad Law.* The term may mean one thing or another, under different circumstances. The word has been said to be synonymous with 'station.' While it may or may not correctly be used to designate a station at which trains merely stop, as for wood and water, more specifically it means a station at which trains stop for the *transaction of the ordinary business of the company, the receiving and delivering of freight and passengers;* a place where railroad trains regularly come to a stop for the convenience of passengers and for the purpose of receiving and discharging freight; the place where a carrier is accustomed to receive, deposit, and keep ready for transportation or delivery the merchandise carried by it; *a certain place situate alongside of*

*or near its railroad fitted up by it with suitable buildings, erections, appliances, and conveniences for carrying on generally and continuously, in an orderly manner, the business of transporting freights, as is usually done by such companies.* The maintenance of either a depot building or an agent is not indispensable to a depot; it depends more upon the business done and the matters incidental thereto." (Italics ours.)

Similar definition will be found in 2 Words & Phrases, 2d series, p. 3.

Again, in 18 C. J. 783, note 30 (b), it is said, as to the meaning of the word "depot" as related to passenger traffic:

"The term 'depot' is sufficiently broad to embrace within its meaning a 'passway' used for the convenient and safe egress and ingress of passengers. It is not restricted in its signification to the 'house' or structure used also for their convenience in this respect. . . . *Galveston, etc., R. Co. v. Thornsberry,* (Tex.) 17 S. W. 521, 523 [quot *Illinois Cent. R. Co. v. Causey,* 106 Miss. 36, 48, 63 S. 336, Ann. Cas. 1917A 1281]."

But it is argued that if the word "depot" be not confined to the building itself there is no way to limit it. That does not at all follow, though we are not here faced with some hypothetical situation where there might be difficulty in drawing the line. If the railroad company should disregard its regular practice and should unload merchandise somewhere at a distance from the platform provided for the purpose and it were stolen from such a place—a place not suitable for the proper handling and guarding which a carrier is obliged to provide—an entirely different question would be presented. How far, if at all, beyond the platform where goods in transit are regularly handled, might be considered part of the freight "depot," we need not here consider. In the instant case the merchandise·was on the regular baggage truck, standing on the platform, under the canopy and within three feet of the wall of the station house. Under such circumstances the offender certainly stole it from the "depot."

The petitioner cites 18 C. J. 783, note 28a, wherein it is said that "in construing a statute imposing on railroads the duty of keeping their depots or passenger houses lighted and *warmed*" "these do not include *platforms.*" A statute providing that a depot be *warmed,* as well as lighted, obviously had to be construed as including only the building. If the word "lighted" alone had been used, a different interpretation might have been made. All of which merely illustrates the axiomatic principle that words in a statute

must be construed in the light of their context and of the general purpose of the enactment.

Finally, the petitioner invokes the familiar rule of law that criminal statutes are to be strictly construed in favor of the accused. That rule is too well established to require any argument in its support. But that rule does not require courts to disregard the generally accepted meaning of words used in a statute simply because some people may attach a different meaning to them. Petitioner's contention is based upon the erroneous assumption that unless we expand their meaning by interpretation the words "railroad depot" mean only the building itself. The situation is definitely to the contrary. As heretofore stated, the words mean—according to the authorities—not only the building, if there be one, but the established conveniences connected therewith for the orderly transaction of the business. Indeed, as stated in the definition taken from Corpus Juris, *supra*, it is not even necessary that there be a "depot building" to constitute the place a "railroad depot."

We are neither clothed with legislative power nor with the exercise of executive clemency. Our responsibility here is solely to construe the intention of the legislature as expressed in the statute.

We find no error in the conviction or sentence, and the petition for a writ of habeas corpus is denied.

DAWSON, C. J. (dissenting): It is an elementary rule of law that penal statutes must be construed strictly. (*State v. Chapman*, 33 Kan. 134, 5 Pac. 768.) Nothing may be added to them by inference or intendment. (*Bagley Investment Co. v. Merrick*, 122 Kan. 734, 735, 253 Pac. 562, and citations.) To say that a theft of merchandise from a baggage truck standing on the platform of a railway station is a *larceny in a railway depot or station house* seems erroneous in two aspects, *first*, a baggage truck is neither a depot nor a station house; and *second*, the decision of the majority completely ignores the settled rule of this court and of courts in general that a penal statute should be strictly construed and is not to be enlarged by argument, deduction or interpretation, although the court may think the legislature should have made it more comprehensive. (59 C. J. 1113-1117.) I therefore dissent.

WEDELL, J., joins in the foregoing dissenting opinion.

HARVEY, J., not sitting.