The State of Kansas, *Appellee*, v. Ted Scott, *Appellant*.

No. 36,786

(178 P. 2d 182)

Opinion filed March 8, 1947.

*Hall Smith*, of Topeka, was on the briefs for the appellant.

*A. B. Mitchell*, attorney general, *Allen Meyers*, county attorney, and *Maurice D. Freidberg*, assistant county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was a prosecution for burglary in the first degree. Defendant was convicted and appeals.

The pertinent portion of G. S. 1935, 21-513, under which appellant was prosecuted provides:

"Every person who shall be convicted of breaking into and entering, in the nighttime, the dwelling house of another, in which there shall be at the time some human being, with intent to commit some felony, or any larceny therein. . . ."

Appellant argues the evidence failed to establish (1) the burglary was committed in the nighttime; and (2) that at the time of the burglary there was a human being in the dwelling house.

We do not deem it necessary to narrate all of the evidence relative to the time element. The offense was alleged to have been committed in Topeka, Shawnee county. Appellant's own evidence was that the records of the weather bureau office in Topeka indicated

the sun set at 7:52 on June 24, 1946, the day of the alleged offense. Appellant's witness, a city police officer, dispatched a radio call to 1601 Harrison, the place of the alleged burglary, at 8:41 p. m. Other police officers, witnesses of the appellee, testified they received the radio dispatch at 8:41 p.m. while in their police car and they were at the time only nine blocks from the scene of the alleged burglary; that their car lights were turned on at the time; they were unable to discern human features without lights; they used the spotlight for that purpose and when they arrived at 1601 Harrison they were unable to discern the features of appellant without use of a flashlight.

Other testimony of appellee relative to the time of the burglary ranged from 8:00 to 8:30 and 9:30 p. m.; the state's witness who had knocked appellant down and wrestled with him after he had come out of the dwelling testified it was too dark to see appellant's facial features sufficiently to recognize him and that he was able to discern his features only after the police car arrived and threw its lights onto appellant.

In the absence of a statutory definition of nighttime it appears the evidence was sufficient. In 9 Am. Jur., Burglary, § 18, it is said:

"At common law, as has been stated, the burglarious act must be committed in the nighttime. This is not confined to the exact period between sunrise and sunset. The rule is thus laid down by Blackstone: 'If there be daylight or crepusculum enough, begun or left, to discern a man's face withal, it is not burglarly. But this does not extend to moonlight.' This rule of Blackstone is substantially supported in those states where there is no statutory definition of nighttime. The fact that features may be distinguishable by reflection from the street lights on the snow or by moonlight does not affect the question of time with respect to burglarly."

In 9 C. J., Burglary, § 28 (2), it is stated:

"In the absence of statutory provision to the contrary, the 'night time,' within the definition of burglarly, is as was held at common law, that period between sunset and sunrise during which there is not daylight enough by which to discern a man's face. In some jurisdictions, however, nighttime is defined by the statutes, the definitions varying in the different jurisdictions." (p.1021.)

See, also, 12 C. J. S., Burglary §§ 14, 60.

Appellant emphasizes certain testimony of the state which he contends shows the offense was not committed in the nighttime. Granting the existence of such evidence it remained the province of

the jury to resolve the conflict and if, as here, the jury, after a consideration of all the evidence and under proper instructions, was convinced beyond a reasonable doubt the burglary was committed in the nighttime courts will not disturb the verdict. It is not contended the instructions were erroneous or inadequate.

Appellant also asserts it was not shown that at the time of the burglary there was a human being in the dwelling house. Whether the contention is sound depends upon whether the front porch, under our statutes and the circumstances to be narrated, constituted a part of the dwelling house.

The building was a duplex. It contained a large front porch which, except for a few feet, ran the entire length of the east side of the dwelling. The porch was not screened or glassed. It was surrounded by a railing except for that portion where the front steps led onto the porch. The porch was roofed and was permanently affixed to the dwelling house. The porch contained furniture and other items for the use of occupants of the home. It was a warm night. The porch was used and maintained a great deal of the time during the summer months as a part of the home. The Lawns occupied the downstairs and the upstairs was occupied by William R. Palmer and his wife. The latter were not in the building at the time of the burglary. The Lawns were at home. By reason of the temperature they and their guests were occupying the front porch. The porch was customarily so occupied during the summer months.

Was there a human being in the dwelling house within the contemplation of the burglary statute? With respect to this inquiry we are not left entirely without legislative assistance. G. S. 1935, 21-519, provides:

"No building shall be deemed a dwelling house or any part of a dwelling house, within the meaning of the foregoing provisions, unless the same be joined to or immediately connected with, and a part of, a dwelling house."

It is true porches are not expressly named in the above statute. While all porches may not properly be classified as buildings it is a fact that porches ordinarily are, and this porch was " . . . joined to or immediately connected with, and a part of, a dwelling house." In many of our Kansas homes porches are furnished as lavishly as some rooms in the dwelling house. In many more homes our porches are comfortably furnished for both recreational

and practical dwelling house purposes. They perform numerous functions of a dwelling house. They, instead of the living room, recreation room, study or library, are the portion of the dwelling frequently used for social functions. They are often employed as a dining room and this is especially true during the hot summer weather. Their use as sleeping quarters during the hot summer months is common and this is true irrespective of whether they are screened, glassed or open. In fact, most porches in Kansas, as the porch in the instant case, are a structural part of the dwelling house and many of them serve dwelling-house functions. In short our porches ordinarily constitute an integral part of the dwelling house.

Had the front porch of this dwelling been screened and appellant had broken the screen or the lock on the screen door in the night-time with the intent to rob a person sleeping thereon would we say the robbery was not committed in a part of the dwelling house? We do not think so. In the instant case appellant broke into the rear of the dwelling house on the first floor. Supposing appellant had come through the house and robbed the persons on the un-screened porch. Would we say they were not robbed in a part of the dwelling house when that was the part of their home they were using for dwelling purposes at the time? We do not think so. Was the front porch, under the circumstances any 'the less a part of the dwelling because appellant may have intended to commit a felony in some other part of the dwelling? We do not think so.

The increased punishment for burglary in the first degree when a human being is at the time in the dwelling is provided by reason of the greater danger to human life than exists in the absence of a human being. It seems to us it would be difficult, if not impossible, to reasonably and logically conclude such danger would be greater if a human being were on the second or third floor of the dwelling, while the first floor of the dwelling was being burglarized, than it would be if a human being were on the porch, which in reality formed a portion of the first floor of the dwelling.

In the case of *In re Brenner,* 151 Kan. 788, 100 P. 2d 688, a majority of this court held:

". . . that a defendant who plead guilty to stealing merchandise 'from a baggage truck standing on the platform' of a railroad station 'within three feet of the wall of said station and under the canopy of said station extending over said platform' was properly charged, convicted and sentenced under the provisions of section 21-1909, G. S. 1935, which provides the penalty for

larceny 'committed *in* any railway depot, station house,' etc." (Syl.) (Emphasis supplied.)

It is true that was a larceny and not a burglary case and that a dwelling house was not involved. The case is not cited as being conclusive of the issue now under consideration but only as indicating that a building, a railway depot in that case, may embrace more than the inside portion of the building enclosed by walls. Appellant cites some cases from other jurisdictions on the proposition that ordinarily a porch is not a building or a house. We recognize the force of those decisions. With proper respect and regard for them and other similar decisions that might be cited we have upon careful consideration concluded that this porch, under our statutes and the facts in this case, should be regarded as being a part of the dwelling house for the purpose of determining whether a human being was in the dwelling house at the time of the burglary.

The judgment is affirmed.