No. 82,370

STATE OF KANSAS, *Appellee*, v. JASON R. MOLER, *Appellant*.

(2 P.3d 773)

Opinion filed June 2, 2000.

*Craig H. Durham*, assistant appellate defender, argued the cause, and *Kirk Christopher Redmond*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the briefs for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *David Lowden*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Jason R. Moler appeals his jury trial conviction of burglary (K.S.A. 21-3715[b]), a severity level 7, nonperson felony. He·was sentenced to 12 months' imprisonment and placed on probation. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

In this appeal, two issues are raised:

1.   Whether the "lean-to" defendant was convicted of entering was an "other structure" within the meaning of the burglary statute; and

2.   Whether there was sufficient evidence supporting the jury's finding that defendant had entered the lean-to with the intent to commit a theft.

We shall first consider the structure issue.

STATUTE

The pertinent statute is K.S.A. 21-3715, which provides in part:

"Burglary is knowingly and without authority entering into or remaining within any:

"(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

"(b) building, manufactured home, mobile home, tent or *other structure* which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or

"(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein." (Emphasis added.)

Defendant contends the lean-to in question was not an "other structure" within the purview of K.S.A. 21-3715(b).

## STANDARD OF REVIEW

Statutory interpretation is a question of law and, accordingly, this court's review is unlimited. *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998).

## RULES OF STATUTORY INTERPRETATION

A fundamental rule of statutory construction is that the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature rather than determine what the law should or should not be. 263 Kan. at 847.

The general rule is that a criminal statute must be strictly construed in favor of the accused and any reasonable doubt about its meaning is decided in favor of anyone subjected to the criminal statute. However, this rule is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. 263 Kan. at 847; *State v. Spain*, 263 Kan. 708, Syl. ¶ 2, 953 P.2d 1004 (1998); *State v. Lawson*, 261 Kan. 964, 966, 933 P.2d 684 (1997).

The rule of *ejusdem generis* (of the same kind) is a well known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms. *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, 620, 913 P.2d 142 (1996).

## FACTS

At trial, William Minihan, owner of the property involved, testified about the lean-to and the events leading to the filing of the

charge herein. Approximately 175 feet behind Minihan's house is a large enclosed workshop. On the south side of the shop Minihan built a four stall lean-to to provide sheltered parking for individuals using the shop. The shop wall is the north side of the lean-to. Walls were put up on the east and west sides to form the lean-to and a roof was added. The south side of the lean-to is totally open. The lean-to has a dirt floor. It is essentially a four stall carport abutting the shop.

Minihan's bedroom is on the same side of the house as the shop. His bedroom has a door which opens onto a deck. When Minihan walks out his bedroom door and onto the deck, he faces the shop.

The night before defendant was apprehended on Minihan's property, someone had entered one of the trucks parked in the lean-to. Minihan called law enforcement officers, and they photographed footprints found near the vehicle. Some items inside the truck had been disturbed. As a result of this incident, Minihan installed motion detectors with lights. The detectors were set for 75 feet in any direction. The lights were connected in such a way that when motion was detected at either the north or south end of the shop, lights would come on at the shop, and lights and an alarm would also go off in the house. Before going to bed, Minihan's son swept away all the footprints around his truck.

Shortly after midnight on June 19, 1998, the lights and alarm went off. Minihan arose from bed and went out on the deck. He saw someone running south. Minihan yelled, "What are you doing?" The individual replied, "Who, me?" Minihan directed, "Come up here; I want to see—I want to talk to you." The intruder, later identified as defendant, walked up to Minihan's yard. When asked what he was doing, defendant told Minihan his friend had a flat tire about 1.5 miles away and he was trying to find a jack. Minihan said there were seven to eight houses between where defendant said his friend's car was and Minihan's house. Minihan had defendant come up on the deck where they waited until the deputy arrived. Minihan testified that nothing was missing from the lean-to.

Scott Minihan, William's son, testified that he knew defendant through other people.

Deputy Michael Lowrey responded to the call. Lowrey photographed a footprint beside the truck parked inside the lean-to. He also investigated a car parked on a private drive nearby which was registered to defendant's mother. The car was parked on the left side of the road with the driver's door open. The keys were lying on the front seat. The trunk was unlatched and partially opened. The car had no flat tires. Deputy Lowrey confiscated defendant's tennis shoes, which were admitted into evidence along with the photographs of the footprints from both incidents.

Defendant sought to have the charges dismissed based on his argument that the lean-to was not a structure under the burglary statute. Defendant renewed his argument in a motion for acquittal at the close of the State's evidence and again after his conviction. The motions were denied. The district court reasoned:

"Although I agree with Mr. Beall [defense counsel] that there's plenty of case law that would tend to agree with his position, when I sit back and think about the outbuildings that I'm used to and grew up with, if someone would take something out of there I would—you know, I think our society and the Legislature intends that that be burglary. That is a nondwelling. So I'm going to overrule your motion at this time."

## DEFINITION

Am. Jur. 2d on Burglary discusses the uses and meanings of phrases such as "any other building" or "any other house" included in many burglary statutes:

"A building is a structure that has capacity for, and is designed for the habitation of, man or animals, or the sheltering of property, even though the building is unfinished. While the word 'building' has been defined broadly as a structure or edifice, it is commonly understood to be a house for residence, business, public use, the shelter of animals, or the storage of goods. The word 'house' in a burglary statute means approximately the same as the word 'building,' and the word 'structure' is in its widest sense defined as any production or piece of work artificially built up or composed of parts joined together in some definite manner; any construction or edifice for any use; or that which is built, such as a dwelling house, store, shop, warehouse, or any other building." 13 Am. Jur. 2d, Burglary § 6.

Black's Law Dictionary 1436 (7th ed. 1999) defines structure using some of the same language included in the Am. Jur. 2d discussion:

"1. Any construction, production, or piece of work artificially built up or composed of parts purposefully joined together <a building is a structure>."

Webster's dictionary defines "structure" as follows:

"1: the action of building . . . 2a: something constructed or built . . . b: something made up of more or less interdependent elements or parts: something having a definite or fixed pattern of organization . . . 3: the manner of construction: the way in which the parts of something are put together or organized." Webster's Third New International Dictionary 2267 (1986).

These are, obviously, very broad definitions of "structure." Under such definitions, the purposeful nailing together of two boards would create a structure. Is this broad definition of structure what is meant by "other structure" in K.S.A. 21-3715(b)? First we must look at Kansas case law.

## CASE LAW

The phrase "or other structure" in the Kansas burglary statute was discussed by this court in *State v. Fisher*, 232 Kan. 760, 658 P.2d 1021 (1983). There, the defendants were charged with burglary when hogs located in a rural area were shot by intruders and then removed from their pens. The defendants challenged the burglary charges, arguing that the two hog pens were not capable of being burglarized as they were not "structures" within the contemplation of the burglary statute. The district court agreed and dismissed those charges. This court affirmed. 232 Kan. at 764.

The two hog pens were described as follows:

"Each has a concrete floor, but no roof. The pens are constructed of 36" by 120" prefabricated metal hog panels which are similar to fencing, but rigid. The panels are attached to steel fence posts. Hog pen #1 is a rectangle measuring 32' by 16' and is enclosed on three sides by panels and on the fourth side by a barn. Hog pen #2 is a rectangle measuring 36' by 30' and all four sides are panels except for a small shed in one corner. The barn and shed are not involved in the burglary charges." 232 Kan. at 761.

This court indicated that the crux of the issue before it was whether a broad or restrictive meaning should be ascribed to the term "or other structure" as used in K.S.A. 21-3715. In its broad sense, under either the general dictionary definition or Black's definition, virtually anything capable of being constructed could be called a

structure and would, therefore, be legally capable of being burglarized. We declined to adopt that construction. 232 Kan. at 761.

We reasoned:

"The hog pens in question are essentially small areas enclosed by three-foot-high fences. Obviously, the only persons to whom such low sides would constitute actual physical barriers are young children. The applicable rules of statutory construction do not support the inclusion of fenced areas such as these hog pens within the term 'structure' as used in K.S.A. 21-3715." 232 Kan. at 761.

We noted the requirement that criminal statutes must be strictly construed against the state while words are given their ordinary meanings. Further, hog pens such as these are not *ejusdem generis* with buildings, mobile homes, or tents.

We then stated:

"No Kansas cases have been found where penetration of low-fenced enclosures, such as the hog pens herein, have been held to constitute burglary. The following are examples of the traditional type of buildings and structures which have previously been held to have been capable of being burglarized: a granary, which has a floor, door and roof, *State v. Groning*, 33 Kan. 18, 5 Pac. 446 (1885); *State v. Martin*, 223 Kan. 78, 573 P.2d 576 (1977); a buggy house, *State v. Garrison*, 52 Kan. 180, 34 Pac. 751 (1893); a chicken house, which has walls, doors and a roof, *State v. Poole*, 65 Kan. 713, 70 Pac. 637 (1902); a cave which has a door attached to it and is used for the storage of vegetables and victuals, *State v. Sanders*, 81 Kan. 836, 106 Pac. 1029 (1910); and a moveable freight car, *State v. Mooney*, 93 Kan. 353, 144 Pac. 228 (1914)." 232 Kan. at 763.

Although we speculated in *Fisher* that there may be hog pens that are structures under the statute (232 Kan. at 763-64), we concluded that these particular hog pens were not structures under the purview of K.S.A. 21-3715.

The State argues that in *State v. Scott*, 162 Kan. 571, 573-75, 178 P.2d 182 (1947), this court held that structures attached to an enclosed building are protected by the burglary statute. Defendant, however, correctly distinguishes this case.

At the time *Scott* was decided, the pertinent portion of the burglary statute provided:

" 'Every person who shall be convicted of breaking into and entering, in the nighttime, the dwelling house of another, in which there shall be at the time some human being, with intent to commit some felony, or any larceny therein.' " 162 Kan. 571.

The issues on appeal were whether the burglary was committed at nighttime and whether at the time of the burglary there was a human being in the dwelling house. 162 Kan. 571.

In *Scott,* the burglary involved a duplex with a large front porch running the length of one side of the dwelling. The porch was not screened or glassed, was surrounded by a railing except where the steps lead up to the porch, and was roofed and permanently affixed to the house. Because it was a warm night, the porch was "occupied" by the people living in the house. The intruder entered through the back door of the house, not through the porch. The question, therefore, was whether there was a human being in the dwelling house at the time of the entry. The court answered in the affirmative, holding that the presence of people sleeping on the porch made it an occupied dwelling. 163 Kan. at 573-75.

*Scott* is easily distinguished as: (1) the burglary statute has been extensively amended since 1947; and (2) the underlying issues were entirely different than the issue which is before us herein.

The parties cite cases from other jurisdictions in support of their respective positions. Case law from other jurisdictions has little value in our analysis as different statutes are involved and the respective courts are building on their own prior case law.

One of these cases, however, warrants inclusion herein. In *State v. Foulenfont,* 119 N.M. 788, 895 P.2d 1329 (Ct. App. 1995), the defendants had entered into the Repo Ranch by climbing a chain link fence that enclosed the premises which held Repo Ranch's inventory of mobile homes. The question before the New Mexico Court of Appeals was whether a fence constituted a structure for purposes of the burglary statute. 119 N.M. at 789.

Burglary in New Mexico is defined as the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein. The *Foulenfont* court noted that the general purpose of the burglary statute is to protect possessory rights with respect to structures and conveyances and to define "prohibited space." 119 N.M. at 790.

Beginning with the definition of "structure" in Black's Law Dictionary 1424 (6th ed. 1990), the court noted that it had previ-

ously disapproved of the wholesale adoption of this and similar commonly used definitions for purposes of construing the breadth of this section of the burglary statute. Given its earlier holdings, *Foulenfont* concluded that the scope of the burglary statute's "or other structure" language did not include the fence. Because a strict construction is required for criminal statutes, the court rejected the plain meaning approach applied by other courts. The court interpreted the phrase "other structure" as requiring an enclosure similar to a vehicle, watercraft, aircraft, or dwelling. 119 N.M. at 791. Further, the court noted that all of the enumerated objects in the statute are capable of completely confining people and property. Had the defendants made an unauthorized entry into an office or mobile home at Repo Ranch once inside the fence, the burglary statute would be applicable. When the unauthorized entry merely consisted of climbing over a fence, businesses and other open property would have to be protected under the state's criminal trespass statute. 119 N.M. at 792.

## CONCLUSION

As previously noted, we rejected the broad construction of "other structure" as set forth in K.S.A. 21-3715 in *State v. Fisher*, 232 Kan. 760. *Fisher* was decided in 1983, but, despite major amendments to the burglary statute since that date, the legislature has not amended the statute to broaden out the restrictive construction of "other structure" we set forth in *Fisher*.

In the burglary statute, the enumerated items are intended to present a barrier to entry, which in turn provide an enclosed space for the security of persons or property which may be contained therein. The lean-to herein is permanently and entirely open on one side. Its purpose was, apparently, to protect or shield vehicles from weather. It was not designed for or intended to exclude entry of persons from its area, nor was it capable of being so utilized. When strictly construed, "other structure" does not include this lean-to. While the vehicles within the lean-to would be within the protection of the burglary statute, the lean-to itself is not. This result is consistent with that reached in *Fisher*. Given this conclusion, defendant's conviction must be reversed.

By virtue of the resolution of this issue, we need not address defendant's second issue.

The judgment of the district court is reversed.