No. 82,687

STATE OF KANSAS, *Appellee,* v. CRYSTAL J. JASPER,
*Appellant.*
(8 P.3d 708)

Opinion filed
July 14, 2000.

*Rick Kittel,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Rick J. Scheufler,* county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals her conviction of felony murder based on child abuse. Defendant claims (1) the district court abused its discretion by refusing to appoint new counsel, and (2) the evidence was insufficient to sustain the conviction.

Crystal Jasper lived with her boyfriend, Jerome Spies, and lived across the street from her brother and sister-in-law, Mark and Debbie Jasper, in Great Bend, Kansas. On March 11, 1998, Crystal was caring for her niece, Miranda, age 2, and nephew, Lance, age 5 months. Crystal had arrived at her brother's home at approximately 5:15-5:20 in the morning. Mark and Debbie left for work at approximately 5:45 a.m.

Sometime between 5:45 a.m. and 7:30 a.m., Crystal went to her home, changed her jeans, and then returned to her brother's home to care for the children. Shortly thereafter, she came home and informed Jerome that something was wrong with Lance. Jerome went with Crystal to check on Lance. After observing that Lance was not breathing, Jerome hurried to a neighbor's house and called an ambulance. He then returned to Lance and began CPR efforts.

A medical emergency unit arrived at 7:34 a.m. Lance had no pulse or spontaneous respirations. Lance was taken to the hospital in Great Bend. The emergency room doctor at the hospital determined that Lance had a heartbeat and only infrequent respirations. The doctor noted faint marks on the left side of Lance's face.

Blood tests revealed that Lance's blood was acidic, indicating that he had not been breathing for some time. By 8:30 a.m., Lance's pupils were no longer equal or responsive to light, suggesting a head injury and bleeding inside the skull. As time passed, the bruising on Lance's face became more prominent, indicating that the force that caused the bruising had occurred within the hour.

Lance was transported by Life Watch helicopter to Wesley Medical Center in Wichita, Kansas. Lance's condition deteriorated. On March 12, 1998, Lance had no brain activity. After a final test to assess Lance's condition, Lance was removed from life support and died on March 13, 1998.

The autopsy of Lance's body performed by Dr. Corrie May revealed several injuries on the left side of Lance's face, including bruising around the left eye, in front of the ear, within the ear, on the cheek, and on the lower jaw. There were also small bruises below the right eye and on Lance's left upper arm. An examination of Lance's brain showed hemorrhaging over the surface of the

brain. The brain was swollen, flattening the normal ridges on the surface. Dr. May concluded that Lance had suffered a subdural hematoma and two skull fractures. Dr. May also noted that Lance had prior to the day of his death sustained four rib fractures on the left side and a right forearm fracture. Dr. May opined that Lance's death was caused by shaken impact syndrome.

Crystal told the police that she had been changing Lance's diaper when he suddenly stopped breathing. Crystal was charged in an amended complaint with (1) felony murder based on child abuse by intentional shaking, causing great bodily harm and, alternatively, (2) felony murder based on child abuse by intentional and cruel beating and, alternatively, (3) felony murder based on abuse of a child by intentional shaking which resulted in great bodily harm and by intentional and cruel beating; and, additionally, two counts of abuse of a child by beating and shaking.

Trial was held on September 14-18, 1998. The defense called no witnesses. Evidence was admitted that Crystal suffers from epilepsy and that medication does not completely control the illness.

At the close of evidence, the complaint was amended to charge (1) felony murder based on child abuse by intentional shaking or cruel beating and (2) child abuse based on intentional shaking or cruel beating. The other charges were dismissed. Crystal was found guilty of both charges. Prior to sentencing, the district court acquitted Crystal of the child abuse conviction, in compliance with *State v. Smallwood*, 264 Kan. 69, 955 P.2d 1209 (1998). The *Smallwood* court had determined that time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and, therefore, subject to the felony-murder rule. 264 Kan. 69, Syl. ¶ 7. The *Smallwood* court determined that a single assaultive incident of abuse of a child (K.S.A. 21-3609) which results in the death of the child merges with the killing and constitutes only one offense. 264 Kan. 69, Syl. ¶ 8.

At sentencing, Crystal admitted her actions and responsibility for the death of Lance and expressed remorse to her family. A sentence of life imprisonment was imposed. Crystal appeals.

## APPOINTMENT OF NEW COUNSEL

Prior to trial, Crystal sent a letter to the district judge requesting the appointment of new counsel and alleging she was not on good terms with her appointed attorney and the attorney was acting to her detriment. At a hearing on the request, Crystal indicated that since the writing of the letters to the judge, she had discussed matters with her attorney, had resolved their differences, and wanted to proceed with her appointed attorney.

After the hearing on the request, Crystal again wrote the judge seeking appointment of new counsel. Crystal complained that her appointed attorney had found no witnesses or experts to testify on her behalf at trial. In addition, the attorney had not made arrangements for her to keep her appointments with her neurologist and, as a consequence, her epilepsy had worsened.

At the second hearing to consider Crystal's request for new counsel, the judge asked Crystal if she had anything to add to the complaints in her letters. Crystal indicated that she would submit her request based on the letters sent to the court.

The appointed attorney was asked to respond to Crystal's complaints. The court-appointed attorney informed the judge that he had provided Crystal with copies of all pleadings, reports, witness statements, and medical records. He had corresponded with Crystal and had provided her with copies of the proposed jury instructions. Counsel further informed the judge that he had explained to his client the plea offer made by the State, including the ramifications of acceptance and refusal. Counsel had also provided Crystal with copies of caselaw and memorandums of decisions of the Supreme Court of Kansas involving "shaking-baby" cases. Counsel indicated that he and Crystal had communicated through personal conferences, correspondence, and by telephone. He explained that he always asked Crystal whether she had any questions at the conclusion of their contacts.

Counsel stated that he had made inquiries but had been unable to obtain an expert witness that would testify favorably for Crystal. In his efforts to obtain an expert witness, he had contacted medical experts and provided them with the medical records as well as the

testimony given at the preliminary hearing. None of the experts were willing to testify within the required degree of medical certainty favorable to Crystal's defense.

The judge denied Crystal's request for new counsel, stating that the case was a week away from trial and that he had confidence in the defense counsel's professional experience and competency. Generally, the decision on whether an indigent defendant's dissatisfaction with his or her court-appointed counsel warrants appointment of new counsel is left to the discretion of the trial court. *State v. Hegwood*, 256 Kan. 901, 903, 907, 888 P.2d 856 (1995). Crystal contends that the trial court abused its discretion in failing to appoint new counsel at her request. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998).

In *State v. Saeger*, 13 Kan. App. 2d 723, 724, 779 P.2d 37 (1989), the Kansas Court of Appeals adopted a three-factor test for determining whether the trial court abused it discretion in failing to discharge a court-appointed attorney at the request of the defendant. The three-factor test was adopted from *U.S. v. Gallop*, 838 F.2d 105, 108 (4th Cir.), *cert. denied* 487 U.S. 1211 (1988). The three factors are: (1) timeliness of the motion; (2) adequacy of the trial court's inquiry into the defendant's complaint; and (3) whether the attorney-client conflict was so great that it resulted in total lack of communication and prevented an adequate defense.

The Kansas Court of Appeals has continued the use of the three-factor test in subsequent cases where the defendant alleges that the trial court abused its discretion in failing to appoint new counsel. See *State v. Collins*, 27 Kan. App. 2d 372, 373-74, 4 P.3d 639 (2000); *State v. Lewis*, 27 Kan. App. 2d 134, 138, 5 P.3d 531 (2000); *State v. Mosley*, 25 Kan. App. 2d 519, Syl. ¶ 1, 965 P.2d 848, *rev. denied* 266 Kan. 1113 (1998). This court has not specifically approved the test in any case. However, in *State v. Ferguson*, 254 Kan. 62, 864 P.2d 693 (1993), this court noted that Ferguson's argument concerning the trial court's refusal to appoint new counsel was structured on the framework of the *Seager* three-factor test.

In reviewing a trial court's refusal to appoint substitute counsel, this court prefers the test set out in *State v. Hegwood*, 256 Kan. at 903. *Hegwood* held that to warrant substitute counsel, a defendant must show "justifiable dissatisfaction" with appointed counsel. Justifiable dissatisfaction sufficient to merit substitution of counsel includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the attorney and the defendant. 256 Kan. at 903-04; see *State v. Taylor*, 266 Kan. 967, 973, 975 P.2d 1196 (1999); *State v. Speed*, 265 Kan. 26, 42-43, 961 P.2d 13 (1998). We also note that the Court of Appeals used the *Hegwood* analysis in *State v. Cuddy*, 22 Kan. App. 2d 605, 608, 921 P.2d 219 (1996).

Whether the dissatisfaction of an indigent accused with a court-appointed counsel warrants discharge of that counsel and appointment of new counsel is for the trial court, in its discretion, to decide. Irreconcilable conflict between a defendant and his or her attorney may, under certain circumstances, require the appointment of substitute counsel in order to protect a defendant's Sixth Amendment right to effective assistance of counsel. *Ferguson*, 254 Kan. 62, Syl. ¶ 2. Has Crystal demonstrated to the trial court a justifiable dissatisfaction with appointed counsel, *i.e.*, a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the attorney and the defendant sufficient to warrant appointment of substitute counsel?

Crystal's letters to the trial court do not allege a conflict of interest or a complete breakdown in communications. The essence of Crystal's complaint was that her court-appointed counsel found no witnesses or doctors to testify in her favor at trial. The trial court reviewed the allegation. Counsel explained that he had sought experts to testify on Crystal's behalf, but could find none. Clearly, Crystal's dissatisfaction with her appointed counsel was based on counsel's inability to produce evidence that would exonerate Crystal. It was unfortunate for Crystal, but the evidence she desired could not be produced because counsel could not find an expert who would testify on her behalf.

Her complaint is not an irreconcilable conflict that could be remedied by the appointment of new counsel. Therefore, Crystal

has failed to demonstrate a justifiable dissatisfaction with her court-appointed counsel. The trial court did not abuse its discretion in refusing to appoint substitute counsel.

## SUFFICIENCY OF EVIDENCE

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998). To support a conviction for felony murder, all that is required is to prove that a felony inherently dangerous to human life was being committed, and that the homicide was a direct result of the commission of that felony. *State v. McCray*, 267 Kan. 339, Syl. ¶ 1, 979 P.2d 134 (1999).

Crystal's argument does not question whether the evidence was sufficient but rather whether, given Crystal's unfortunate circumstances at the time of the crime, *i.e.*, seizure disorder, pregnancy, and unsatisfactory relationship with her boyfriend, and the lack of evidence of intent to cause harm to Lance, she should have been convicted of the lesser crime, second-degree murder. Second-degree murder is the unpremeditated intentional killing of a human being or the unintentional but reckless killing of a human being under circumstances manifesting extreme indifference to the value of human life. K.S.A. 21-3402.

She acknowledges that intent is not an element of felony murder based on child abuse. Crystal contends that the evidence at trial supports a verdict of unintentional but reckless killing of a human being. Crystal points out that she would have received a lesser sentence if the State had been required to prove she had an intent to kill: She would have been convicted of second-degree murder which has a 10-year parole eligibility date instead of the 15-year parole eligibility date for felony murder.

The fact that the evidence might support a conviction of unintentional but reckless killing of a human being as well as the first-degree felony murder based on a felony inherently dangerous to

human life is not a basis for this court to reverse the first-degree felony murder conviction. Crystal's issue fails.

Affirmed.