(55 P.3d 365)
Nos. 87,187
87,188

STATE OF KANSAS, *Appellee*, v. JUSTIN VOGT and JACOB GRABER, *Appellants.*

Opinion filed October 11, 2002.

*Michael C. Robinson,* of Reynolds, Forker, Berkley, Suter, Rose & Graber, of Hutchinson, for appellants.

*Franklin Terrill Bruce,* assistant district attorney, *Keith E. Schroeder,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before ELLIOTT, P.J., GERNON and MARQUARDT, JJ.

MARQUARDT, J.: Justin Vogt and Jacob Graber were convicted of hunting deer with an artificial light in violation of K.S.A. 32-1003(g). Vogt and Graber appeal the trial court's interpretation of K.S.A. 32-1003(g) and the sufficiency of the evidence. We affirm.

On the evening of December 8, 2000, Conservation Officer Rodney Albright of the Kansas Department of Wildlife and Parks was patrolling around Pretty Prairie, Kansas. At about 8:45 p.m., he saw two pickup trucks driving west from town. Officer Albright followed the trucks with his headlights turned off. After several miles, the lead truck shined a spotlight into the surrounding wheat fields. The spotlight illuminated three deer. The second truck left the road and pursued the deer across an open wheat field.

The deer escaped into tall grass, and the second truck returned to the road. Officer Albright activated his emergency lights and the trucks fled. After approximately ½ mile, the lead truck pulled over.

Officer Albright questioned Graber and Vogt, who were the occupants in the truck. Both admitted that they had spotlighted the deer and threw the spotlight out of the truck during the pursuit. Officer Albright issued citations and released them. No weapons were found in their truck.

The State charged Vogt and Graber with hunting deer with an artificial light, a violation of K.S.A. 32-1003(g). The statute makes it unlawful for any person to

"throw or cast the rays of a spotlight, headlight or other artificial light on any highway, roadside, field, grassland, woodland or forest for the purpose of spotting, locating or taking any wildlife while having in possession or control, either singly or as one of a group of persons, any rifle, pistol, shotgun, bow *or other implement* whereby wildlife could be taken . . . ." (Emphasis added.)

At trial, the occupants of the second truck, Clay Bontrager and Jason McClure, testified that though they followed Vogt and Graber, they had no coordinated attempt to kill or harass deer with their trucks. They testified that the spotlight was never on the deer because Vogt and Graber turned the spotlight off when Bontrager and McClure went into the field.

Vogt admitted that he used a spotlight, but claimed he did not know the second truck intended to pursue the deer off the road. Graber testified that the group was intent on finding and watching large bucks, but he was upset when the second truck went off the road.

In closing argument the trial court asked the State:

"THE COURT: The problem I have here, Mr. Bruce, is you're saying this statute provides for other implement. It talks about rifle, pistol, shotgun, bow or other implement. You're saying the other implement can be a vehicle?

"MR. BRUCE: Yes.

"THE COURT: So anytime you spotlight deer from a vehicle, are you in violation?

"MR. BRUCE: If the wildlife could be taken. If it was a situation where the vehicle could fit into. . . whereby wildlife could be taken."

The trial court found Vogt and Graber guilty, stating:

"I think the entire case rests upon the issue of the legislative intent in the phrase other implement. All the other requirements of the statute have been met. . . . Neither of these defendants had in their possession or control what

we generally refer to as a weapon. What the statute refers to; rifle, pistol, shotgun or bow.

"The evidence I have before me is sufficient to convince me that all four people were working in concert. . . .

"And as Mr. Bruce points out, the word taken, taking of wildlife has a very broad definition. Much broader than just kill or catch or trap. It indicates pursue. It includes harass. And clearly that can be done with a vehicle and was done with a vehicle. The deer were pursued. The deer were harassed with a vehicle. . . ."

Vogt and Barber timely appeal.

Interpretation of a statute is a question of law, and this court's review is unlimited. An appellate court is not bound by the trial court's interpretation. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). Criminal statutes are to be construed strictly against the State. *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998). It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998).

Vogt and Graber claim that the trial court misinterpreted the meaning of K.S.A. 32-1003(g), and pursuit and harassment of wildlife are not a means of "taking" them. However, they ignore K.S.A. 32-701(t), which states: " 'Take' means harass, harm, pursue, shoot, wound, kill, molest, trap, capture, collect, catch, possess or otherwise take, or attempt to engage in any such conduct." Vogt and Graber also claim that a vehicle cannot be an "implement" with which wildlife can be taken. The term "implement" is not defined in the statute.

The legislative history of K.S.A. 32-1003 noted that the purpose of the bill is to protect landowners' rights and prohibit illegal hunting or poaching with an artificial light. It allows the landowner to carry a firearm for protection, surveillance, and normal farming and ranching activities.

K.S.A. 32-1003(g) clearly prohibits placing a spotlight on wildlife for the purpose of spotting, locating, or taking these animals if the person or group of persons is in possession of any of the listed items whereby a taking could occur. Vogt and Graber were spotlighting while their companions used the second truck to harass,

pursue, or molest the deer. Because spotlighting is commonly done from trucks, the question remains, could the truck be used for taking?

The rule of *ejusdem generis* (of the same kind) is a well known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms. *State v. Moler*, 269 Kan. 362, 363, 2 P.3d 773 (2000).

K.S.A. 32-1003(g) requires that the person possess or control the "other implement whereby wildlife could be taken." There is no question that Vogt and Graber possessed and controlled the truck. Even though a vehicle is not commonly thought of as a weapon, the very broad definition of the word "take" in K.S.A. 32-701(t), combined with the use of the words "whereby wildlife could be taken," causes us to conclude that a vehicle falls within the meaning of "other implement."

Vogt and Graber argue that the State did not present any direct evidence showing a coordinated attempt to take wildlife. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000). On appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are to be resolved in favor of the State. *State v. McCray*, 267 Kan. 339, 343, 979 P.2d 134 (1999). Even the gravest offense may be established by circumstantial evidence. *State v. Murillo*, 269 Kan. 281, 286, 7 P.3d 264 (2000).

In this case, Officer Albright testified that he observed the two trucks travel together for over 7 miles. They made several turns together in the countryside. Further, when the lead truck turned on its spotlight, the second truck continued to follow. There was

sufficient evidence to find Vogt and Graber guilty beyond a reasonable doubt.

Affirmed.

ELLIOTT, J., dissenting: I dissent. While I cannot fault the majority's rationale and analysis, I am simply unable to attribute to the legislature the intent for the phrase "rifle, pistol, shotgun, bow or other implement whereby wildlife could be taken" [K.S.A. 32-1003(g)] to mean "rifle, pistol, shotgun, bow" or *vehicle*.

Rifles, pistols, shotguns, and bows are commonly categorized as weapons. Normally, where the listing of specific things is followed by a more general word or phrase, the general word or phrase is limited to things of the same kind. See *State v. Moler*, 269 Kan. 362, 363, 2 P.3d 773 (2000).

If it is accurate to say rifle, pistol, shotgun, bow, or *vehicle*, then surely it must be accurate to say ice cream, chocolate pie, frozen yogurt, or *bulldozer*, since all could commonly be categorized as desserts. I cannot hold the legislature intended such a result.

I would reverse.