The Honorable Kenny A. Wilk State Representative, 42nd District 715 Cottonwood Drive Lansing, Kansas 66043 The Honorable Nick Jordan State Senator, 10th District 7013 Albervan Shawnee, Kansas 66216
Dear Representative Wilk and Senator Jordan:
As State Representative from the 42nd District and State Senator from the 10th District, you pose several questions related to the Land and Water Recreational Areas Act (Act, also commonly referred to as the Recreational Use Statute, or RUS),[1] and amendments proposed to that Act by 2003 Senate Bill No. 134 (S.B. 134) that were vetoed by Governor Sebelius.
You first ask whether the Act currently provides immunity for landowners who provide agricultural tourism opportunities on their land.
This Act, initially passed in 1965, gives as its stated purpose: "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the liability towards persons entering thereon for such purposes."[2] The impetus for this Act was explained by the 10th Circuit Court of Appeals:
 "The Kansas RUS, K.S.A. 58-3201 to -3207, uses verbatim the language of model legislation recommended by the Council of State Governments. The model statute was intended to encourage private landowners to make their lands available for public recreational use. See 24 Suggested State Legislation, The Council of State Governments, Public Recreation on Private Lands: Limitations on Liability (1965). Similar legislation has been enacted in nearly all of the fifty states, although in some states the RUS statute is referred to by other names, such as a landowner's liability statute or a sightseer statute. In any event, these statutes promote casual recreational use of open space by relieving landowners of the concern that they will be sued for injuries to strangers who hunt, trek, fish, and otherwise recreate on their land or water free of charge.
 "In promoting the model legislation, the Council of State Governments argued that unless the liability of private landowners was limited, many landowners would simply close their lands to public use and many recreational opportunities thereby would be lost to the public. Id. Although the preamble to the model legislation indicated that concern for private
landowners prompted the legislation, the actual language of the model legislation simply states that its purpose was `to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.' Id. While echoing this specific provision, the Kansas RUS, unlike its prototype, does not include a preamble explaining that the purpose is to protect private landowners. Instead, limited liability is simply extended to `owners of land,' which includes lessees."[3]
Under the terms of the Act, "land" includes both agricultural and nonagricultural land.[4] The meaning of "recreational purpose" is a non-exclusive list of various outdoor activities.[5]
Liability/Limited Immunity
To accomplish the Act's stated purpose, with two exceptions, the Act provides that an owner of land who makes all or any part of the land available to the public for recreational purposes may not be held liable for failure to keep the premises safe for recreational purposes or for failure to warn of a dangerous condition, use, structure or activity.[6]
Accordingly, a landowner who falls within the statute's ambit normally owes no duty of care to keep the premises safe for recreational purposes, or to give any warning of dangerousness.[7] Essentially, this statutory provision shields a landowner, who invites or permits persons to enter his land for certain purposes, from what would otherwise permit liability for ordinary negligence.[8]
There are two exceptions, however, to this statutory grant of limited immunity from liability: (1) for willful[9] or malicious failure to guard or warn against a dangerous condition, use, structure, or activity, and (2) for injuries when the owner of nonagricultural land charges for recreational use of the land.[10] Under the Act, an owner of agricultural land may operate under statutory protection from liability for ordinary negligence whether or not a fee is charged for recreational use of the land, but an owner of nonagricultural land operates under this statutory protection only if a fee is not charged.[11]
Protected Activities
Your first question is posed in terms of "agricultural tourism." Under current law, limited liability is provided when land is used for a "recreational purpose," which "includes, but is not limited to":
 "Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites."[12]
Due to the rule of ejusdem generis some risk of excluding certain kinds of agricultural tourism activities is inherent in framing a statutory list of recreational purposes that uses "including, but not limited to" language.
"The rule of ejusdem generis (of the same kind) is a well known maxim on construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms."[13]
This risk is exemplified by a Texas case[14] in which the Court was called upon to decide whether sitting on a swing (that broke, injuring the plaintiff) should be included as a "recreational activity" under the Texas Recreational Use Statute. While the majority held that playing on playground equipment was certainly within the type of activity "associated with enjoying . . . the outdoors" and thus within the statute's limited liability protection, a strong and spirited dissent based on the rule ofejusdem generis would have determined otherwise. The lesson to be learned is that the more inclusive and specific a statutory list, the greater the chance that a court will determine activities the Legislature intended to be included will be included.
Charges and Fees
You next ask whether the fact that a landowner charges a fee in exchange for the agricultural tourism opportunity impacts liability for injuries sustained on the property. As indicated, an owner ofagricultural land may operate under statutory protection from liability for ordinary negligence whether or not a fee is charged for recreational use of the land, but an owner of nonagricultural land operates under this statutory protection only if a fee is not charged.[15]
Clarifying Language
Finally you ask whether the language provided by 2003 S.B. 134 is necessary to clarify the immunity from liability of a landowner who provides agricultural tourism opportunities. Certainly in light of the above discussion of the ejusdem generis rule, the additional activities proposed to be included in the definition of "recreational purpose" would be helpful, assuming the intent is to expand the type of protected activities. We do note the proposed changes include a definition of "recreational farming activities," but do not include a definition of "recreational ranching activities." Absent such a definition, it would be left to a court to determine whether any particular activity should be included as a recreational ranching activity.
Other than those suggestions, it is difficult to respond to this question because the question assumes that we know the direction the Joint Committee on Economic Development would like to take or that one or more words or phrases within the Act are unclear. In the absence of knowing the Committee's intent, any applicable court decision or discerning language that is patently ambiguous, we are unable to render an opinion concerning this question, with one exception. K.S.A. 58-3204
states, in pertinent part:
 "[A]n owner of land who either directly or indirectly invites or permits any person to use such property or any part of such property, for recreational purposes or an owner of nonagricultural land who either directly or indirectly invites or permits without charge any person to use such property, or any part of such property, for recreational purposes does not thereby: . . ."[16]
That portion of K.S.A. 58-3204 is confusing because "land" means both agricultural and nonagricultural land.[17] Consequently, the first part of that section seems to indicate that an owner of agricultural or nonagricultural land with or without charging a fee would have limited liability, while the second part contradictorily indicates that an owner of nonagricultural land only without charging a fee would have limited liability.
In researching the legislative history of this statute, we discovered that one word in the1988 amendments intended for this statute was inadvertently omitted. According to both the Minutes of the House Committee on Agriculture and Small Business held March 28, 1988, and to the House Journal dated March 29, 1988, that statute should have been amended by inserting "agricultural" preceding the word "land" in the first italicized phrase quoted above. K.S.A. 58-3204 would be much clearer had that word been added to the statute so that it would then read:
 "[A]n owner of agricultural land who either directly or indirectly invites or permits any person to use such property or any part of such property, for recreational purposes or an owner of nonagricultural land who either directly or indirectly invites or permits without charge any person to use such property, or any part of such property, for recreational purposes does not thereby: . . ."[18]
In conclusion, under the Land and Recreational Area Act, an owner of agricultural land may operate under statutory protection from liability for ordinary negligence whether or not a fee is charged for recreational use of the land, but an owner of nonagricultural land operates under this statutory protection only if a fee is not charged. "Recreational purpose" includes, but is not limited to, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] K.S.A. 58-3201 et seq.
[2] K.S.A. 58-3201.
[3] Klepper v. City of Milford, 525 F.2d 1440, 1444 (1987). "Owner" means "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." K.S.A. 58-3202(b).
[4] K.S.A. 58-3202(a). "Agricultural land" is defined as "land suitable for use in farming and includes roads, water, watercourses and private ways located upon or within the boundaries of such agricultural land and buildings, structures and machinery or equipment when attached to such agricultural land." K.S.A. 58-3202(e). "Nonagricultural land" is defined as "all land other than agricultural land." K.S.A. 58-3202(g).
[5] K.S.A. 58-3202.
[6] K.S.A. 2002 Supp. 58-3203.
[7] Id.
[8] An invitee is one who enters or remains on property at the invitation of a landowner for the benefit of the landowner or the mutual benefit of both. Gerchberg v. Loney, 223 Kan. 446, 449 (1978). A licensee (or permittee) is one who is on property at the express or implied consent of a landowner. Gerchberg, 223 Kan. at 448. In Jones v. Hansen,254 Kan. 499 (1994), the Kansas Supreme Court abolished the distinction between invitees and licensees, and held that the standard for both categories of plaintiffs would be one of reasonable care under the circumstances. This is distinguished from a duty to refrain from wilfully, wantonly or recklessly injuring a trespasser, i.e., one who enters the premises of another without any right or lawful authority or permission of the landowner. Gerchberg, 223 Kan. at 448.
[9] "Kansas tort law overwhelmingly favors a definition of willfulness as intentionally causing an injury or doing wrong rather than intentionally acting or failing to act in a way that merely allows a wrong to occur." Klepper, 525 F.2d at 1446. "Kansas law directs the conclusion that unless the defendants intended to injure the plaintiff or otherwise had a designed purpose or intent to do wrong, they were not guilty of willful failure to guard. . . . Under Kansas precedents and pattern instructions, willful failure to warn is more than mere reckless or knowing failure to warn with awareness of the possible consequences; it is a purposefully designed failure to warn with the intent to do wrong or cause injury." Id. at 1447.
[10] K.S.A. 2002 Supp. 58-3204 and K.S.A. 58-3206.
[11] K.S.A. 2002 Supp. 58-3204 and K.S.A. 58-3206.
[12] K.S.A. 58-3202(c).
[13] State v. Moler, 269 Kan. 362, 363 (2000).
[14] City of Bellmead v. Torres, 89 S.W.3d 611 (Tx. 2002)
[15] We note that in at least seven states, litigation finally resolved the issue of whether a parking fee was considered a "charge" in relation to the state's recreational use statute: no, if assessed only to those entering by vehicle, not by foot or bicycle, and if assessed on a per vehicle, not per person, basis. Cole v. South Carolina Electric and Gas,Inc., 584 S.E.2d 405 (S.C. 2003); Majeske v. Jekyll Island State ParkAuthority, 433 S.E.2d 304 (Ga. 1993); Garreans v. City of Omaha,345 N.W.2d 309 (Neb. 1984); Jones v. United States, 693 F.2d 1229 (9th Cir. 1982, applying Washington law); Hall v. United States, 2003 WL 1877593 (W.D. Va. 2003, applying Virginia law); City of Louisville v.Silcox, 977 S.W.2d 255 (Ky. 1998); Reed v. City of Miamisburg,644 N.E.2d 1094 (Ohio 1993).
[16] Emphasis added.
[17] K.S.A. 58-3202(a).
[18] Emphasis added.