NOT DESIGNATED FOR PUBLICATION

No. 114,612

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEAN ALAN COWLES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kingman District Court; LARRY T. SOLOMON, judge. Opinion filed March 31, 2017. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*:  Dean Alan Cowles appeals his conviction for second-degree murder. Cowles raises two issues on appeal. First, he alleges the district court erred in permitting the State to introduce evidence that he attempted to cover up the murder by framing someone else. Second, he alleges the court erred in denying him new counsel. As to his first issue, we find the cover-up evidence was relevant to establish Cowles' intent because it demonstrated a consciousness of guilt, and reasonable people could agree with the district court that the probative value of the evidence outweighed any prejudicial impact. Regarding the second issue, the record reflects Cowles failed to raise an issue that

1

amounted to a conflict of interest or breakdown in communication with his attorneys that would necessitate withdrawal of his current counsel. Finding no error, we affirm.

FACTS

On the evening of February 19, 2014, Cowles and J.C. Hartpence were drinking alcohol in Cowles' trailer, which belonged to the oil drilling company for which they both worked in Kingman, Kansas. At some point in the evening, Cowles called Curtis Shelton, another employee who worked for the oil drilling company. Cowles was angry because it was after work hours but Curtis' son, Nicholas, had not returned to the trailer with a truck belonging to the company. Both Cowles and Hartpence exchanged angry words with Curtis.

Cowles and Hartpence left Cowles' trailer intending to get the truck back. On their way out, they borrowed a pistol from another company employee. Cowles and Hartpence then got into a truck, drove to a liquor store to buy more alcohol, and then headed out of town. Hartpence testified he drove the truck while Cowles gave him directions. Cowles ultimately led Hartpence to Curtis' home in Nashville, Kansas, which was about 45 minutes to 1 hour away from Kingman. Hartpence testified that when they got there, Cowles jumped out of the truck and ran towards Curtis' house. Hartpence followed Cowles into the house at a slower pace and proceeded to the only light that was on in the house, which was the back bedroom. Upon arriving at the bedroom, Hartpence saw Cowles on the bed, straddling Curtis, and hitting Curtis in the face with a belt and belt buckle wrapped around Cowles' right hand. Hartpence lunged and shoved Cowles off of Curtis, at which time Hartpence testified Curtis may have started reaching for a handgun on the nightstand. In what Hartpence described as a split-second decision, Hartpence used the pistol to fire two rounds in Curtis' forehead, killing him. Cowles and Hartpence then fled the house.

2

Cowles and Hartpence were both arrested and charged with Curtis' murder. Cowles was charged with second-degree murder. Hartpence pled guilty to first-degree felony murder and testified at Cowles' trial. After a 4-day trial, a jury found Cowles guilty.

ANALYSIS

*Evidence of a cover up*

At trial, the State introduced evidence that in the days after the incident, Cowles talked to several people about killing Nicholas to cover up Curtis' murder. Specifically, Cowles said he intended to make it look like Nicholas killed his father and then committed suicide. Hartpence testified that after the murder, Cowles repeatedly said that Nicholas "needed to be dealt with," and that Nicholas needed to be taken "out of the equation." Hartpence testified that Cowles made these statements while making a gesture with his hand that simulated pulling the trigger of a pistol under his chin. Alisha Hemken, who was an acquaintance of Hartpence and Cowles, testified that Cowles asked her several times for some of her sleeping pills in the days after the murder. When Hemken asked him why he wanted the pills, Cowles explained that he was going to give them to Nicholas to render Nicholas unconscious so Cowles "could take [Nicholas] out somewhere and make it look like [Nicholas] killed himself." Despite Cowles' repeated requests, Hemken refused to give him the sleeping pills. Finally, the State called as a witness Stephanie Bacon, who was in a dating relationship with Hartpence at the time of the incident. Bacon testified that Hartpence told her that Hartpence and Cowles had been fighting after the murder, especially when Cowles suggested "'taking care of,'" *i.e.,* killing, Nicholas.

Before trial, Cowles filed a motion in limine seeking to exclude evidence of "[a]ny plan or effort by the defendant to kill Nicholas Shelton." At the hearing on the matter, the

district court denied the motion, ruling that the evidence was admissible. Specifically, the court stated the cover-up evidence was relevant to Cowles' consciousness of guilt, intent, absence of mistake or accident, and plan. The district court judge acknowledged that Cowles' argument that an attempted cover up did not necessarily indicate intent, but explained that the evidence could "cut[] both ways," and it was for the jury to determine which aspect to believe.

The district court's decision to permit the State to introduce evidence of Cowles' plan to cover up Curtis' murder was made pursuant to K.S.A. 2016 Supp. 60-455. This court reviews the district court's decision to admit evidence under that statute as follows:

- "'First, the district court must determine whether the fact to be proven is material, meaning that this fact has some real bearing on the decision in the case. The appellate court reviews this determination independently, without any required deference to the district court.
- "'Second, the district court must determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact. In making this determination, the district court considers whether the evidence has any tendency in reason to prove the disputed material fact. The appellate court reviews this determination only for abuse of discretion.
- "'Third, if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, then the district court must determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. The appellate court also reviews this determination only for abuse of discretion.'" *State v. Richard*, 300 Kan. 715, 721, 333 P.3d 179 (2014).

Cowles acknowledges that the issue of his intent is a disputed material fact here. Nevertheless, Cowles argues the cover-up evidence is not relevant to his intent because the alleged cover up took place after Curtis was killed. And even if relevant, Cowles argues the court should have deemed the cover-up evidence inadmissible because the evidence is more prejudicial than probative. The State disagrees with both of Cowles'

4

arguments claiming the evidence is relevant to Cowles' intent because it demonstrates a consciousness of guilt, which is material to intent and absence of mistake or accident, and that the probative value of such evidence outweighs any prejudice to Cowles.

Given the arguments presented and the applicable law, we must decide two issues related to the court's decision to permit the cover-up evidence to be introduced: first, did the district court abuse its discretion in finding that the cover-up evidence was relevant, *i.e.*, had a tendency in reason to prove Cowles' intent with regard to the murder, and second, did the district court abuse its discretion in finding that the probative value of the cover-up evidence outweighed any prejudice to Cowles. The district court abuses its discretion if its action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). The burden of proof is on the party alleging that the court abused its discretion. *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009).

*Relevance*

Relevant evidence is any evidence that has "any tendency in reason to prove any material fact." K.S.A 60-401(b). Again, Cowles argues that the cover-up evidence is not relevant to prove intent because the alleged plan was formed *after* the murder and, thus, did not have any logical tendency to prove his state of mind *before* the murder. But Kansas courts repeatedly have held that evidence of a defendant's actions after an event can demonstrate the defendant's consciousness of guilt, which can be material to several issues in a criminal case if those issues are disputed, including intent, identity, or plan. See, *e.g.*, *State v. Huddleston*, 298 Kan. 941, 960-61, 318 P.3d 140 (2014) (letters written by defendant years after murder reveal defendant was conscious of her guilt and need to

5

shift blame and, therefore, "can be material to several issues in a criminal case, including intent, identity, plan, or other matters"); *State v. Phillips*, 295 Kan. 929, 948-49, 287 P.3d 245 (2012) (evidence of defendant's flight from police months after crime admissible as relevant to intent and purpose for which crimes were committed; evidence "merely goes to the weight of the evidence, once established it may certainly create a logical connection that the fleeing was a result of guilty consciousness"); *State v. Dixon*, 289 Kan. 46, 70, 209 P.3d 675 (2009) (evidence of conversation after crime "material to Dixon's possible consciousness of guilt and attempt at a coverup"); *State v. White*, 263 Kan. 283, 296, 950 P.2d 1316 (1997) ("White's conduct in taking affirmative and intentional steps to destroy and conceal evidence of the crime after he killed his mother indicates that he premeditated the killing.").

Here, a reasonable person could agree with the district court that Cowles' attempt to shift blame for the murder may indicate that Cowles' plan to cover up the murder was a result of his guilty conscious and, in turn, that such evidence had a tendency in reason to prove Cowles' intent with regard to the murder. See *Huddleston*, 298 Kan. at 961. Cowles' argument, that the evidence could also indicate that he was present for the murder but was afraid of being blamed, merely provides an alternate explanation for the cover up based on his version of the facts. The jurors were properly allowed to hear the relevant cover-up evidence and could make findings of fact accordingly. Cowles essentially asks this court to reweigh the evidence and come to a different conclusion based on his account of the events. It is not the function of this court to reweigh evidence or resolve evidentiary conflicts. *State v. Lowrance*, 298 Kan. 274, 296, 312 P.3d 328 (2013). The district court did not abuse its discretion in finding the cover-up evidence to be relevant.

The evidence also was relevant to establish absence of mistake or accident. As noted, Cowles asserts he did not know Hartpence was going to kill Curtis and, therefore, the murder was a mistake or accident that Cowles simply did not see coming. The

6

evidence of his plan to cover up the crime, however, does not support Cowles' assertion in this regard. One can reasonably conclude that if Cowles truly was surprised by the murder and was innocent of any wrongdoing, he would not suggest taking subsequent steps so drastic as to murder another person in an attempt to cover it up. The fact that Cowles did so tends to refute his defense and establish his willing participation in the murder. Thus, again, we find the district court did not abuse its discretion in finding the evidence to be relevant.

*Probative value versus prejudicial impact*

Cowles argues the district court abused its discretion in permitting the State to introduce the cover-up evidence because it is evidence of a prior bad act or other crime with limited probative value that is greatly outweighed by its prejudicial effect. Specifically, Cowles argues the evidence unduly prejudiced him by providing the jury with a factual basis from which it could infer that he "had no problem planning a murder."

Even when evidence is both probative and material, the district court must still determine whether the probative value of the evidence outweighs its potential for producing undue prejudice. Appellate courts review this determination for abuse of discretion. *State v. Wilson*, 295 Kan. 605, Syl. ¶ 1, 289 P.3d 1082 (2012). To demonstrate an abuse of discretion, it is not enough to show that the evidence was prejudicial; rather, the litigant challenging the admission of the evidence must "show that unfair or undue prejudice arising from the admission of the evidence substantially outweighed its probative value." See *State v. Vasquez*, 287 Kan. 40, 53, 194 P.3d 563 (2008).

Evidence of prior bad acts or other crimes is generally prohibited under K.S.A. 2016 Supp. 60-455(a) to prove a person's disposition to commit a crime or civil wrong as the basis for an inference that the person committed another crime or wrong on another

specified occasion. But such evidence can be admitted when relevant to prove some other material fact, such as those listed in the statute, *e.g.*, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. K.S.A. 2016 Supp. 60-455(b). If evidence falling within the scope of K.S.A. 2016 Supp. 60-455 is introduced at trial, the district court must give a limiting instruction to ensure the jury considers the evidence only for the specific reason or reasons it is admitted. See *State v. Smith*, 296 Kan. 111, 124, 293 P.3d 669 (2012).

At Cowles' trial, the district court followed the proper procedure before deciding that the K.S.A. 2016 Supp. 60-455 evidence was admissible. First, the court determined that the steps Cowles took to cover up his participation in the crime were a by-product of his guilty conscious and, thus, the evidence had a tendency in reason to prove Cowles' intent and absence of mistake with regard to the murder. Cowles agrees the issue of intent was disputed. Finally, the district court discussed the probative value versus the prejudicial nature of the cover-up evidence. The court determined the information was not surprising or unduly prejudicial. Finally, the court then gave two prophylactic limiting instructions to the jury with regard to consideration of the cover-up evidence:

"Instruction No. 3
"Evidence has been admitted tending to prove that the Defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of providing the Defendant's motive, intent, plan, identity, involvement, consciousness of guilt, state of mind, control, and relationship to the parties.

"Instruction No. 4
"You are not allowed to consider evidence of actions taken by Dean Cowles, after the commission of a crime of another, to prove the Defendant aided and abetted in the commission of the crime of another.
"Rather, you are allowed to only consider this evidence as it tends to prove some other material fact, such as the Defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or consciousness of guilt."

8

As specifically set forth in these limiting instructions, the district court permitted the jury to consider the cover-up evidence for only limited reasons, none of which included whether Cowles committed the murder at issue or aided and abetted another in committing that murder. When considering prejudice, our Supreme Court has held: "[W]e cannot ignore the district court's limiting instruction to the jury to consider the evidence only for the purposes of identity and plan, and we presume the jury followed that instruction." *Wilson*, 295 Kan. at 621. Similarly, the district court in this case gave a limiting instruction to the jury to consider the evidence solely for the purpose of proving Cowles' intent, plan, or absence of mistake or accident with respect to the charges against him. For these reasons, the district court did not abuse its discretion in determining that the probative value of the evidence was not outweighed by the potential for undue prejudice.

*Motions for new counsel*

In his second issue on appeal, Cowles argues the district court abused its discretion in denying two requests for new counsel: first at the pretrial motions hearing and second at his sentencing hearing. Cowles was represented by two defense counsel, Jason Smartt and Mark Rudy, in this matter.

A defendant has a right to effective assistance of counsel during all critical stages of his or her criminal proceeding under the Sixth Amendment to the United States Constitution. While the right to effective assistance of counsel does not include the right to one's counsel of choice, Kansas law recognizes that an indigent criminal defendant may demand a different appointed lawyer for good cause. See *State v. Staten*, 304 Kan. 957, 970, 377 P.3d 427 (2016).

"To warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel. Justifiable dissatisfaction sufficient to merit substitution of

9

counsel includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the attorney and the defendant." *State v. Jasper*, 269 Kan. 649, Syl. ¶ 1, 8 P.3d 708 (2000).

Upon a showing of justifiable dissatisfaction, the district court must inquire to assess the factual circumstances of the attorney-client relationship. *State v. Brown*, 300 Kan. 565, 577, 331 P.3d 797 (2014). Our Supreme Court recently articulated the three possible errors that may result from the district court's inquiry:

"The first type of error occurs when a district court becomes aware of a potential conflict of interest but fails to conduct an inquiry. Such a failure constitutes an error of law, that is, a failure to follow the law and fulfill a legal duty. The second type of error occurs when a district court conducts an inquiry but fails to do so in an appropriate manner. An appropriate inquiry requires *fully* investigating both the basis for the defendant's dissatisfaction with counsel and the facts necessary for determining whether the dissatisfaction justifies appointing new counsel. The third type of error may occur when a district court conducts an appropriate inquiry but fails to make a decision that is reasonable in light of the facts that come to the fore. [Citation omitted.]" *Staten*, 304 Kan. at 971.

This court may reverse only if judicial discretion has been abused. As we noted above, a district court abuses its discretion if its action is arbitrary, grounded in legal error, or grounded in factual error. *Ward*, 292 Kan. 541, Syl. ¶ 3.

*Pretrial motions hearing*

Cowles argues the district court erred at the April 2, 2015, pretrial motions hearing by finding no breakdown in communication between Cowles and his attorneys. At that hearing, Cowles alleged communication between him and his attorneys was a "brick wall." He admitted that he received copies of the motions and pleadings filed in his case but complained that his attorneys had not asked certain questions of witnesses in his case

10

and had not obtained a hair follicle test as he had requested. Cowles also expressed strong disagreement with his counsel's decisions regarding what witnesses to call and how to conduct cross-examination of some witnesses.

The district court listened to Cowles' concerns and inquired about the basis of the allegations from both his counsel. Smartt responded that he had provided regular copies of pleadings to Cowles, he could easily catch Cowles up on any remaining copies of discovery, and he had been focused more on witness statements than on providing exact copies. He also explained that funding for the hair follicle test had not been approved and that he did not believe that the results of the test would be exculpatory. Both Smartt and Rudy opined that Cowles would have the same challenges with any other counsel because no competent attorney would entertain the requests made by Cowles. Rudy added that Cowles stopped communicating with counsel but that counsel was continuing to communicate with Cowles; Rudy explained that Cowles was choosing not to participate in discussions with his attorneys and opting not to consider their advice.

After hearing from all parties regarding Cowles' concerns, the district court explained to Cowles that his counsel is responsible for looking at all the evidence in the case to decide what witnesses to call, how to examine witnesses, and how to conduct the trial based on their knowledge of the law. The court noted that while Cowles may have disagreed with or disliked some of counsel's decisions, such a disagreement did not mean that there was an irreconcilable conflict or that Cowles was precluded in some way from communicating with his attorneys. The court ultimately found there was no conflict or breakdown in communication to justify replacing counsel.

Cowles contends the district court abused its discretion in making this finding. In support of his contention, Cowles points to the fact that his counsel did not disagree when Cowles insisted at the hearing that their communication was a "'brick wall,'" and Rudy even admitted that the communication was one-sided and called Cowles' requests

11

"'nonsensical'" at times. We are not persuaded the district court abused its discretion. On review, this court focuses on whether the attorney provided appropriate representation in the adversarial process, not on the relationship between attorney and client. *State v. Pfannenstiel*, 302 Kan. 747, 761-62, 357 P.3d 877 (2015). "[U]ltimately, as long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel." *State v. Bryant*, 285 Kan. 970, Syl. ¶ 14, 179 P.3d 1122 (2008).

None of Cowles' arguments on appeal indicate that his counsel was unable to provide effective representation. Upon review of the hearing transcript, it was Cowles, not his counsel, who characterized the communication as a "brick wall," and Rudy clarified that communication was only one-sided because Cowles had ceased communicating with counsel regarding his defense. Finally, counsel submitted, and the court agreed, that any substitute attorney would likely take a similar tactical approach and have the same disagreement with Cowles. We agree with the district court that Cowles' issues with his counsel appear to be based on his dissatisfaction with decisions his counsel made regarding his defense, which do not require the appointment of new counsel. See *Pfannenstiel*, 302 Kan. at 767 (disagreement regarding defense strategy, including which witnesses to call, does not warrant new counsel); *State v. Burnett*, 300 Kan. 419, 450-51, 329 P.3d 1169 (2014) (no error in denying new counsel where defense counsel "refus[ed] to investigate matters or to call witnesses which [defendant] deemed important but, in defense counsel's professional judgment, would be beneficial to or advance [defendant's] defense at trial"). Cowles simply fails to explain how his counsel's decisions or statements negatively affected how those attorneys represented him as they prepared for trial. As the district court found, the issues raised at the hearing did not rise to the level warranting new counsel.

12

*Sentencing hearing*

Cowles also argues the district court erred in denying a request for new counsel at his sentencing hearing. Cowles alleges that the district court ignored his requests for new counsel, and that when he attempted to interject in the proceedings, the court threatened to have him removed from the courtroom. In response, the State asserts Cowles' statements cannot be construed as a request for replacement counsel, that the district court adequately inquired to determine the nature of his request, and that the threat to remove Cowles from the courtroom was unrelated to a request for new counsel.

This issue requires an examination of the record of the sentencing hearing. Prior to the case being called to order and immediately preceding a recess, Cowles stated:

> "THE DEFENDANT: Your Honor—Your Honor, before we go any further, sir, I'd like to reiterate to the Court's attention that back at arraignment I attempted to dismiss counsel. I was refused to do that, sir.
> "THE COURT: We're not going to remove counsel at this point in time.
> "THE DEFENDANT: Your Honor, we were supposed to be in court 30 days ago, and I've never seen this man until now."

At that point, the court went off record for a break. When the case was later called and appearances entered, Cowles indicated that he wanted to appear pro se in addition to with counsel. The judge previewed the motions set to be heard that day, after which the following exchange occurred:

> "[DEFENSE COUNSEL]: Judge, were we on the record before when you came in and Mr. Cowles made his motion?
> "THE COURT: Well, I hadn't even called the case when he started talking, but I believe my court reporter got it.
> "[DEFENSE COUNSEL]: Okay.
> "THE COURT: He desires to represent himself at this sentencing hearing?

13

Is that what you're saying, Mr. Cowles?

"THE DEFENDANT: No, sir, Your Honor. I propose to represent myself in the Non-Disclosure of Exculpatory Evidence, Prosecutorial Misconduct, sir.

"THE COURT: If you're talking about this written document you filed this morning, it's filed of record. Mr. Smartt is here to represent you this morning in the sentencing, and that's how I intend to proceed unless I hear differently.

"THE DEFENDANT: Sir, there's reasonable cause to show that this has been a miscarriage of justice and we need to stop now according to the 18th Amendment [to the United States Constitution].

"THE COURT: Yeah, okay, I get it, and you're going to have a chance to give me a statement in a little while, so—unless you're asking to have Mr. Smartt removed from this sentencing hearing from representing you, we need to proceed the way I want to proceed.

"THE DEFENDANT: You bet, Your Honor. It's definitely in the record that I have objections against this attorneys [*sic*] taking care of me, sir—

"THE COURT: Sure.

"THE DEFENDANT: —so I believe that goes to the Supreme Court as well. Thank you kindly."

The court then moved on to the motions set for the hearing. The first motion it addressed was Cowles' motion for a new trial and judgment of acquittal. As the court recounted the evidence presented at trial and explained its reasoning for denying the motion, Cowles twice interrupted the court to comment on the facts of the case. The district court judge advised Cowles that if he continued to interrupt the court, Cowles would be removed from the courtroom. After the judge finished addressing the motions set for the hearing, he invited Cowles to say anything he had to say to the court. Cowles mainly addressed the factual evidence presented at trial.

Cowles argues on appeal that the district court abused its discretion by failing to inquire into Cowles' request for new counsel after becoming aware of a potential conflict. But our review of the record reveals that the district court made an inquiry and determined that Cowles was not requesting new counsel with regard to the motions and

sentencing before the court at that time. When specifically addressed by the court, Cowles did not state with any specificity that he was arguing for new counsel with regard to his sentencing but, rather, only referred to a previous request for new counsel and his desire to represent himself with regard to his pro se motion filed that day. The court gave Cowles several opportunities to clarify that he was requesting that Smartt not represent him at that hearing, but Cowles did not make that assertion. The court was under no duty to inquire further into the matter where Cowles did not assert a basis for requesting new counsel. See *Burnett*, 300 Kan. at 450-51 (where defendant's statements regarding defense counsel did not rise to level of alleging conflict of interest or breakdown in communication, no duty for district court to inquire further, and no abuse of discretion in refusing to appoint new counsel).

Cowles also argues that rather than inquiring about the basis for his request for new counsel, the district court threatened to remove him from the courtroom. Again, our review of the record does not support Cowles' argument. The record reveals that the court's threat to have Cowles removed from the courtroom was related to Cowles' interruption of the district court's discussion about the motion for a new trial and judgment of acquittal, not about any request for new counsel. In sum, the district court did not abuse its discretion in concluding that Cowles was not requesting new counsel for sentencing at that hearing.

Affirmed.

* * *

ATCHESON, J., concurring:  I concur in the result finding no basis to reverse Defendant Dean Alan Cowles' conviction for intentional second-degree murder because of the admission of the cover-up evidence, especially given how the issue has been

15

presented on appeal. I join in the majority opinion on the second issue finding no error in the district court's rulings on Cowles' requests for new counsel.